IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| WILLIAM JOHN HENRY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MIKE FERRITER, LEROY KIRKEGARD, TODD BOISE, REBECCA MCNEIL, DR. RANTZ, TRISTAN KOHUT, DR. PIRANIAN, CINDY HINER, and CATHY REY,<br><br>　　　　Defendants. | Cause No. CV 12-0019-H-DLC-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT |

**I. SYNOPSIS**

Pending is Plaintiff William Henry's Amended Complaint. C.D. 6. Mr. Henry's claims fail to state a claim upon which relief may be granted. This case should be dismissed. This action presents a federal question over which jurisdiction lies pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 42 U.S.C. § 1983.

**II. STATEMENT OF CASE**

**A. Parties**

1

Mr. Henry is a prisoner proceeding without counsel. He is incarcerated at Montana State Prison in Deer Lodge, Montana. In his original complaint, Mr. Henry named Mike Ferriter, Leroy Kirkegard, Todd Boise, Rebecca McNeil, Dr. Rantz, Tristan Kohut, Dr. Piranian, Cindy Hiner, and Cathy Rey as Defendants. C.D. 2.

In the Amended Complaint, Mr. Henry names Mike Ferriter, Leroy Kirkegard, Todd Boise, Rebecca McNeil, Elizabeth Rantz, Triston Kohut, Dr. Steve Prianian, Cristy Boise, Dr. Henderson, and Cindy Hiner. C.D. 6, pp. 3-4. Cathy Rey was not listed as a defendant in the Amended Complaint.

### B. Factual Allegations

Mr. Henry alleges he has been denied proper medical attention for his deteriorating spine, his heart, a hydrocele[1], and he has been denied an order for a bottom bunk. C.D. 6.

#### 1. Deteriorating Spine

Mr. Henry alleges he had disc surgery on his back before being incarcerated in Montana State Prison. Once at the prison he saw Dr. Boise concerning his back pain. X-rays were allegedly taken confirming a deteriorating spine and loss of the

---

[1] A hydrocele is an accumulation of fluid in a body cavity. See http://www.mayoclinic.com/health/hydrocele/DS00617/DSECTION=symptoms, (accessed December 12, 2011).

natural curve of the spine. Mr. Henry contends Dr. Kohut ordered tests which were not done. He alleges he has constant pain in his lower back and the doctors do nothing except document its worsening condition. C.D. 6, p. 6.

### 2. Heart Condition

Mr. Henry alleges he had a heart attack in July 2010. Tests were ordered by both Dr. Kohut and Dr. Piranian but were not done. He was taken to the Powell County Hospital for chest pain on December 20, 2011 and was seen by Dr. Martin. Dr. Martin explained the pain was caused by not enough oxygen getting to his heart. Dr. Martin ordered more tests which were also not done. C.D. 6, p. 7.

### 3. Hydrocele

Mr. Henry contends he has dealt with pain in his groin area caused by a hydrocele since July 2011. He was excused from work for eight weeks due to the condition. C.D. 2-1, p. 4. Mr. Henry saw Dr. Kohut about the hydrocele on or about July 19, 2011 who recommended he see a surgeon. C.D. 2-1, p. 6. On August 15 and 17, 2011, Mr. Henry sent medical requests to see the surgeon. C.D. 2-1, p. 5, 6. On September 28, 2011, he received a response indicating no hernia was detected by Dr. Raiser and he was clear to go back to work but to be careful with lifting. C.D. 2-1, p. 8.

On September 29, 2011, Mr. Henry sent an informal resolution form

indicating Dr. Raiser had ordered a sonogram of the hydrocele which had not been done.² Apparently Mr. Henry received a sonogram on October 14, 2011 because he sent a medical request on October 19, 2011 asking to discuss the sonogram with Dr. Kohut. The response indicated Mr. Henry would be seen. C.D. 2-1, p. 9.

A November 4, 2011, grievance response indicates Mr. Henry received the ultrasound recommended by Dr. Raiser and the results and treatment options would be discussed with him at his appointment the upcoming week. C.D. 2-1, p. 12. On November 27, 2011, Mr. Henry appealed the denial of his grievance to the Warden asking that Dr. Raiser review the sonogram and discuss treatment options. In that grievance appeal, Mr. Henry referred to the hydrocele as a "tear or hole that will not go away by itself." C.D. 2-1, p. 14. Dr. Rantz responded stating that Dr. Raiser would review the ultrasound. C.D. 2-1, p. 14.

On December 15, 2011, Mr. Henry appealed his grievance to the Corrections Division complaining his medical problem had not been addressed properly. He stated Dr. Kohut acknowledges he has a hydrocele but only told him to take naproxen for pain relief, which Mr. Henry contends will not fix the hydrocele. C.D. 2-1, p. 15. The appeal was denied on December 27, 2011. C.D. 2-1, p. 16.

---

²The terms "sonogram" and "ultrasound" are used interchangeably in the pleadings and documents attached thereto.

4

On January 28, 2012, Mr. Henry sent a medical request asking that something be done because the hydrocele was "getting unbearable" and waking him up at night. Mr. Henry reported a one and half to two year history of hydrocele in his right groin which recently had increased drainage, a foul smell, and pain. The plan was to follow-up with a medical provider to discuss current status and results of ultrasound. Mr. Henry alleges Dr. Piranian said he would order a CAT scan. C.D. 2, p. 10; C.D. 2-1, p. 10.

Mr. Henry contends surgery is the only way to fix his hydrocele but Dr. Piranian told him the needed tests and/or surgery would be turned down by the Medical Board because of budget cuts. He also alleges Defendants Boise, McNeil, Rantz, and Ferriter denied his requests for proper medical attention. C.D. 6, p. 8. Mr. Henry does not indicate the current status of the hydrocele nor does he state whether he received a CAT scan as ordered by Dr. Piranian.

### 4. Bottom Bunk Restriction

Mr. Henry alleges he had a bottom bunk restriction since August 2010 because of his heart attack, deteriorating spine, and hydrocele. He states he was given this restriction because he would pass out without warning due to heart problems and the doctors did not want him on the top bunk where he could pass out and fall. He contends Dr. Kohut ordered a heart monitor which he never

received. He alleges his bottom bunk restriction was removed in October 2011 without addressing his medical issues. He states that Rebecca McNeil, Cindy Hiner, Dr. Rantz, and Mike Ferriter all denied his grievances on this issue. C.D. 6, p.10.

**III. SCREENING PER 28 U.S.C. §§ 1915(e)(2), 1915A**

As Mr. Henry is a prisoner proceeding in forma pauperis, this Court must review his claims under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.

An Eighth Amendment claim for failure to provide medical care requires an allegation that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). A plaintiff may demonstrate deliberate indifference by "showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Mr. Henry was advised in the Court's prior order that he needed to provide additional information regarding his claims and not just refer to grievances and medical requests attached to his Complaint. In his Amended Complaint he provides minimal information regarding his claims.

**A.  Deteriorating Spine**

Mr. Henry states he has a confirmed "deteriorating spine" and is losing the natural curve of his spine. C.D. 6, p. 6. He contends tests ordered by Dr. Kohut were not done, he is in constant pain, and the doctors do nothing. C.D. 6, p. 6.

These allegations fail to state a claim upon which relief can be granted. Mr. Henry was advised in the Court's prior Order that he had to provide specific information regarding his claims and the specific acts of the Defendants. Mr. Henry's factual allegations regarding his back are minimal.

Mr. Henry does not allege that Defendants' course of treatment "'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health [,]'" Toguchi, 391 F.3d at 1059 (citation omitted); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir., as amended July 18, 1996)), cert. denied, 519 U.S. 1029 (1996).

Even assuming Mr. Henry sufficiently alleged the existence of a serious medical need, his allegations regarding the alleged failure to provide treatment

other than monitoring, upon this record, reflect nothing more than a disagreement between Mr. Henry and the prison doctors, which is insufficient to state a claim of deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs."); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.")

Mr. Henry also alleges prescribed medical tests were not performed but he does not explain what type of tests were ordered, for what purpose, or how the failure to conduct such tests have caused further injury. "[T]he question whether a[ ] . . . diagnostic technique[ ] or form[ ] of treatment is indicated is a classic example of a matter for medical judgment" and "[a] medical decision not to order [a diagnostic technique or form of treatment] . . . does not represent cruel and unusual punishment." See Estelle, 429 U.S. at 107–08.

Mr. Henry's claims regarding his back are insufficient to state a claim upon which relief may be granted and this claim should be dismissed.

**B. Heart Condition**

Mr. Henry alleges he suffered a heart attack in July 2010 and thereafter tests ordered by Drs. Kohut and Piranian were not done. A year and a half later he was

8

taken to the hospital for chest pains. He alleges Dr. Martin stated the pain was caused by not getting enough oxygen to his heart. Dr. Martin ordered more tests but they were not done either.

Mr. Henry was given an opportunity to provide additional information regarding this claim and he still has not alleged sufficient facts to establish a constitutional violation. First, it is not clear how a failure to conduct some sort of tests (which Mr. Henry does not define) in July 2010 could have avoided additional heart problems a year and a half later. Although Dr. Martin may have ordered oxygen tests in December 2011, Dr. Martin is not a named defendant in this case. Mr. Henry does not name a defendant allegedly responsible for failing to have the oxygen tests done and he fails to allege any further heart difficulties after the December 20, 2011 incident.

These allegations fail to state a claim upon which relief can be granted and as such should be dismissed.

**C. Hydrocele**

For purposes of this Order, the Court will presume Mr. Henry's hydrocele is a serious medical need. Mr. Henry alleges it causes him pain "24/7" and inhibited his ability to work. See McGuckin, 974 F.2d at 1059–60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of

9

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

A difference of opinion between medical professionals concerning the appropriate course of treatment does not amount to malpractice, much less deliberate indifference. Sanchez, 891 F.2d at 242; Jackson, 90 F.3d at 332; Franklin, 662 F.2d at 1344. Similarly, as set forth above, a disagreement between Mr. Henry and the prison doctors is insufficient to state a claim of deliberate indifference. Ordinary medical malpractice is not enough to state an Eighth Amendment claim. Estelle, 429 U.S. at 106. Thus, even if the prison officials were incorrect in their diagnosis, such behavior is insufficient to establish deliberate indifference.

In a recent decision, the Ninth Circuit Court of Appeals differentiated between an unnecessary delay in the administration of prescribed treatment and a misdiagnosis or disagreement between medical professionals. Wilhelm v. Rotman, 680 F.3d 113 (9th Cir. 2012). In Wilhelm, the prisoner plaintiff was seen by two doctors. The first doctor recommended surgery but the referral was denied for inadequate documentation. He then cancelled a second referral stating the

10

prisoner's hernia had resolved. The second doctor did not believe the plaintiff had a hernia and provided no treatment.

The Ninth Circuit held the prisoner's complaint should have been served on the first doctor because he could be found to be deliberately indifferent by acknowledging the prisoner had a hernia and concluding surgery was necessary yet the plaintiff failed to receive treatment for over a year. Wilhelm, 680 F.3d at 1122-23. The Ninth Circuit held the second doctor was properly dismissed because he thought the plaintiff was not suffering from a hernia. Thus, his alleged failure was negligent misdiagnosis or a disagreement with the other doctor. Such allegations are insufficient to establish deliberate indifference. Wilhelm, 680 F.3d at 1123.

Here, Mr. Henry acknowledges he was seen by Drs. Kohut, Raiser, Piranian and Henderson, he received two sonograms/ultrasounds, and was at least prescribed a CAT scan. He also was given naproxen for pain relief. He seems to contend that Defendants were deliberately indifferent in not scheduling surgery but there is no allegation and no indication in the documents attached to the initial Complaint that any doctor recommended surgery. In fact, one document indicates that Dr. Raiser detected no hernia. It appears from the documents presented with the Complaint that the medical personnel at the prison were monitoring Mr. Henry's condition with ultrasounds and observations by the various doctors.

Mr. Henry's allegations regarding his hydrocele fail to state a claim upon which relief can be granted. The claim should be dismissed.

### D. Bottom Bunk Restriction

Mr. Henry alleges he had a bottom bunk restriction beginning in August 2010 because of his heart attack, deteriorating spine, and hydrocele. In October 2011, his bottom bunk restriction was removed without addressing his medical problems. The grievance forms attached to the original Complaint indicate Mr. Henry's medical records were reviewed by medical and his request for a bottom bunk was denied. Follow-up appointments were rescheduled. C.D. 2-1, p. 23. These allegations again amount to nothing more than a difference of opinion between the medical department and Mr. Henry which as set forth above is insufficient to state a claim. <u>Franklin</u>, 662 F.2d at 1344. This claim should be dismissed.

## IV. CONCLUSION

### A. Leave to Amend

Mr. Henry's allegations fail to state a claim upon which relief may be granted as set forth above. Mr. Henry was given an opportunity to correct the defects discussed above and he provided insufficient facts to establish a constitutional violation. Therefore, these defects could not be cured by further

amendments and the case should be dismissed.

### B.  "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim.  28 U.S.C. § 1915(g).  This dismissal constitutes a strike because Mr. Henry failed to state a claim upon which relief may be granted.

### C.  Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
> > (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement

if he or she seeks review of any issue that is "not frivolous."  Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445).  For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact.  Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The finding that Mr. Henry's Amended Complaint fails to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit.  Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

**D. Address Change**

At all times during the pendency of this action, Mr. Henry SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Henry has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

1. This matter should be dismissed with prejudice for failure to state a claim upon which relief may be granted. The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. Henry's failure to state a claim.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. Mr. Henry's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Henry may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. Any such filing

should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If Mr. Henry files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding. In addition, he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude Mr. Henry from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 1st day of August, 2012.

 /s/ Keith Strong
Keith Strong
United States Magistrate Judge